| | |
|---|---|
| SAMUEL RIDDER,<br>        Petitioner, | Case No. 1:18-cv-61 |
| | Barrett, J. |
|        vs. | Bowman, M.J. |
| WARDEN, CHILLICOTHE<br>CORRECTION INSTITUTION,<br>        Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution, has filed

a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  This matter

is before the Court on the petition, respondent's return of writ (Doc. 9), and petitioner's reply

(Doc. 11).  For the reasons stated below, the undersigned recommends that the petition be

denied.

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's

conviction and sentence:[1]

> Defendant-appellant Samuel Ridder moved in with S.W.'s mother shortly after
> S.W. was born.  For the first few years, the three lived in Kentucky with S.W.'s
> older brother.  Shortly after S.W.'s mother gave birth to another child, the family
> moved to Delhi. According to testimony by S.W. at trial, Ridder, on several
> occasions, both in her bedroom and his bedroom, had placed his fingers in her
> vagina and her anus, licked her privates, made her rub his penis with her hand, and
> put his penis in her mouth.  S.W.'s mother had been unaware of Ridder's conduct
> at the time of the incidents, which had occurred when S.W. was between four and
> five years old.
>
> After a domestic-violence incident, S.W.'s mother took the children and left the

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court
shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Because
petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual
findings quoted herein, the state appellate court's factual findings are presumed to be correct.  *See McAdoo v. Elo,*
365 F.3d 487, 493-94 (6th Cir. 2004).

home. After staying briefly with S.W.'s maternal grandfather, S.W.'s mother took the children with her to stay in a domestic-violence shelter in Circleville, Ohio. After staying at the shelter for a few weeks, S.W. disclosed the incidents to her mother. Her mother took S.W. to the Center for Family Safety and Healing at the Nationwide Children's Hospital in Columbus ("Center"). The Center operates under the same guidelines and protocols as the Mayerson Center for Safe and Healthy Children at the Cincinnati Children's Hospital Medical Center ("Mayerson Center"). S.W. was interviewed by Jennifer Westgate, a licensed social worker. After the interview, during which she disclosed some of the conduct and indicated that it had happened "in Kentucky," S.W. was examined and treated by physicians with the hospital. Additionally, staff members from the Center contacted the Delhi Police Department.

Detective Joe Macaluso contacted Ridder and asked him to appear for an interview. In the interview, Ridder denied the allegations. After concluding the interview, Macaluso released Ridder, but told him that he would likely need to be seen again. Because Macaluso had surgery during that time, several months passed before he could contact Ridder. After a couple of failed attempts to coordinate their schedules, Ridder refused to further cooperate with the police. He was later arrested and indicted on four counts of rape, in violation of R.C. 2907.02(A)(1)(b). The first two rape counts alleged digital penetration of the vaginal or anal cavity, the third rape count alleged that he had engaged in cunnilingus with S.W., and the fourth count alleged that he had compelled S.W. to engage in fellatio. He was also charged with one count of gross sexual imposition ("GSI"), in violation of R.C. 2907.05(A)(4), for forcing S.W. to touch his penis with her hand.

At trial, Ridder's trial counsel pursued two separate theories of the case. Counsel's first theory was that her mother had coached S.W. to make the allegations in order to secure the family's stay at a domestic violence shelter in Circleville. Counsel's second approach to the case involved convincing the jury that the incidents occurred in Kentucky, based on what S.W. had said in her interview with Westgate.

(Doc. 8, Ex. 8).

## II. PROCEDURAL HISTORY

### State Trial Proceedings and Direct Appeal

On February 27, 2014, the Hamilton County, Ohio, grand jury returned a five-count indictment charging petitioner with four counts of rape and one count of gross sexual imposition. (Doc. 8, Ex. 1). On April 29, 2015, following a jury trial, petitioner was found guilty of all

charges. (Doc. 8, Ex. 2). Petitioner received a life sentence without the possibility of parole for each of the rape charges and a concurrent eighteen-month sentence for the gross sexual imposition conviction. (Doc. 8, Ex. 3).

On July 31, 2015, petitioner, through counsel, filed notice of appeal to the Ohio Court of Appeals. (Doc. 8, Ex. 5). Petitioner raised the following five assignments of error:

1. The trial court erred as a matter of law by allowing the state to introduce hearsay statements made by S.W. through her Nationwide Children's Hospital interview which violated Ridder's right to a fair trial.

2. The trial court erred as a matter of law by permitting the prosecutor to make improper remarks to the jury thus prejudicing Ridder's rights to a fair trial.

3. Ridder was denied effective assistance of counsel in violation of his constitutional rights thus prejudicing his right to a fair trial.

4. The evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain Ridder's convictions.

5. The trial court erred to Ridder's prejudice by imposing an excessive consecutive prison term without making the requisite Ohio statutory sentencing findings under Ohio Revised Code § 2929.14(c)(4), § 2953.08(g), § 2929.11 and § 2929.12.

(Doc. 8, Ex. 6). On August 3, 2016, the Ohio appeals court overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 8, Ex. 8).

### Ohio Supreme Court

On September 16, 2016, petitioner filed a pro se notice of appeal to the Ohio Supreme Court. (Doc. 8, Ex. 9). In his memorandum in support of jurisdiction, petitioner raised the same five issues raised as assignments of error on direct appeal. (*See* Doc. 8, Ex. 10). On January 25, 2017, the Ohio Supreme Court declined jurisdiction of the appeal. (Doc. 8, Ex. 11).

**Application to Reopen Appeal**

Meanwhile, on November 4, 2016, petitioner filed a motion for an extension of time to file an application to reopen his direct appeal pursuant to Ohio App. R. 26(B). (Doc. 8, Ex. 12). On the same date, petitioner filed a 26(B) application, arguing that his appellate counsel was ineffective for failing to raise the following four issues on direct appeal:

1. Appellant's due process right to effective assistance of counsel was violated when appellant counsel failed to properly argue appellant's due process and equal protection rights under the Fourteenth Amendment of The United States Constitution which prohibits the inclusion of other crimes in another venue without proper jurisdiction.

2. Appellant's due process right to effective assistance of counsel was violated when appellant counsel failed to thoroughly argue appellant's hearsay challenges which constitute violation of state and federal due process rights.

3. Appellant's due process right to effective assistance of counsel was violated when appellant counsel failed to properly argue prosecutorial misconduct by leading the witness which constituted violations of state and federal due process rights.

4. Appellant's due process right to effective assistance of counsel was violated when appellant counsel failed to demonstrate why a Rule 29 motion and/or motion for mistrial would have been granted had trial counsel motioned to court.

(Doc. 8, Ex. 13). On January 13, 2017, the Ohio Court of Appeals found that petitioner failed to demonstrate good cause for his delay in filing the application and denied petitioner's application as untimely. (Doc. 8, Ex. 18).

Petitioner did not file an appeal to the Ohio Supreme Court from the Court of Appeals decision.[2]

---

[2] As discussed below, it appears from documents attached to petitioner's reply, that petitioner unsuccessfully attempted to file a delayed appeal from the Ohio Court of Appeals' decision to the Ohio Supreme Court. (*See* Doc. 11 at PageID 1403). Petitioner also unsuccessfully moved the Ohio Supreme Court to disqualify the trial court

## Federal Habeas Corpus

On January 29, 2018, petitioner commenced the instant federal habeas corpus action.

(Doc. 1). Petitioner raises the following six grounds for relief in the petition:

**GROUND ONE**: The trial court erred as a matter of law by allowing the state to introduce hearsay statements made by S.W. through her Nationwide Children's Hospital interview which violated Ridder's right to a fair trial.

Supporting Facts: State introduced child interview video regarding S.W. through Ms. Westgate's testimony.

**GROUND TWO**: The trial court erred as a matter of law by permitting the prosecutor to make improper remarks to the jury thus prejudicing Ridder's rights to a fair trial.

Supporting Facts: Prosecutor continually asked leading questions putting its desired testimony into the mouths of State's witnesses. Prosecutor testified through purported questioning and added facts not in the record in addition to vouching for State's witnesses and misstating facts in closing arguments.

**GROUND THREE:** Ridder was denied effective assistance of counsel in violation of his constitutional rights thus prejudicing his right to a fair trial.

Supporting Facts: Trial counsel failed to make any Rule 29 motion for acquittal. Trial counsel failed to object to the Nationwide Children's Hospital interview video introduced through Ms. Westgate's testimony. Trial counsel failed to object to many instances of prosecutor misconduct of questioning and added facts not in the record in addition to vouching for State's witnesses and misstating facts in closing arguments.

**GROUND FOUR**: The evidence was insufficient as a matter of law to sustain petitioner's convictions

Supporting Facts: Evidence was materially influenced by prosecution misconduct. Absolutely no physical evidence of sexual acts by petitioner. Testimony of S.W. was inconclusive and inconsistent with itself, the Nationwide Children's Hospital interview video and testimonies of other witnesses which were influenced by prosecutor misconduct.

---

judge from presiding over any further proceedings in his case. (*See* Doc. 8, Ex. 21).

**GROUND FIVE:** The trial court erred to Ridder's prejudice by imposing an excessive prison term without making the requisite Ohio statutory findings under Ohio Revised Code 2929.14(c)(4), 2953.08(g), 2929.11 and 2929.12

Supporting Facts: Court failed to make required statutory findings which resulted in excessive prison terms.

**GROUND SIX**: Appellate counsel was ineffective for failing to present issues as well as issues not fully considered that should have been that prove unreliable process was used to obtain a wrongful criminal conviction prejudicing appellate.

Supporting Facts: Appellate counsel failed to properly and thoroughly argue venue. Appellate counsel failed to properly and thoroughly argue hearsay challenges. Appellate counsel failed to properly and thoroughly demonstrate in detail, using key testimony, the consistent prosecution misconduct that materially influenced the trial.

(Doc. 1 at PageID 5–9).

Respondent has filed a return of writ in opposition to the petition. (Doc. 9). According to respondent, petitioner's grounds for relief are procedurally defaulted and/or without merit.

Petitioner has filed a reply to the return of writ. (Doc. 11).

## III. THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume,

subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38–40, (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of

*Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

### A.   Grounds One and Two are procedurally defaulted and waived.

In Ground One of the petition, petitioner contends that the trial court erred by permitting hearsay statements through the victim's hospital interview. In Ground Two, he claims that the prosecution made improper remarks to the jury. Petitioner contends these alleged errors deprived him of his right to a fair trial.[3] (*See* Doc. 1 at PageID 14, 15).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28

---

[3]  Because the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treaties of the United States, petitioner is unable to prevail on any claim of error under the Ohio Rules of Evidence or Ohio law. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

U.S.C. § 2254(b)(1), (c); *see also Anderson,* 459 U.S. at 6; *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the default of a federal claim in the state court may preclude federal habeas review if the state court judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner fails to comply with a state procedural rule that required him to have done something at trial to

preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

*Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

(1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138

(6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to

bar consideration of a federal claim on habeas corpus review unless the last state court rendering

a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural

bar. *Harris*, 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[4]  In

cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar,

the court will presume that a later unexplained order did not silently disregard the procedural

default and consider the merits of the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

---

[4] In *Harris*, the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris*, 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

11

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "actual prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed a procedural default of the claims asserted in Grounds One and Two by failing to object to the alleged errors at trial. Ohio's contemporaneous objection rule is a firmly-established, adequate and independent state procedural rule, which serves to foreclose federal habeas review when relied on by the state courts as a basis for denying relief. *See, e.g., Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011) (citing *Hinkle*

12

*v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *see also State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001) (noting that Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the adversary system of justice"). The Sixth Circuit has repeatedly held that "plain error" review by the state appellate court "constitutes enforcement of Ohio's contemporaneous objection rule." *See Williams v. Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin*, 632 F.3d at 315.

The Ohio Court of Appeals clearly enforced the state procedural bar by reviewing petitioner's assignment of error under plain error analysis. (*See* Doc. 8, Ex. 8 at PageID 103–106). As such, the state appellate court's plain-error review did not constitute a waiver of the state procedural default rules. *Seymour v. Weaver*, 224 F.3d 542, 557 (6th Cir. 2000); *see also Goodwin*, 632 F.3d at 315. The Ohio Supreme Court's later unexplained entry denying petitioner leave to appeal and summarily dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rely on the same state procedural ground. *See Ylst*, 501 U.S. at 803. *See also Abshear v. Moore*, 354 F. App'x 964, 970 (6th Cir. 2009); *Knuckles v. Brigano*, 70 F. App'x 830, 840 (6th Cir. 2003).

Therefore, the claims alleged in Ground One and Two of the petition are barred from review in this proceeding unless petitioner can demonstrate cause for and prejudice from his procedural default or that a fundamental miscarriage of justice will occur if the ground for relief is not considered on the merits by this Court. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485.

Petitioner has argued in Ground Three of the petition that his trial counsel was ineffective for failing to object to, amongst other alleged errors, the errors alleged in Grounds One and Two. However, as discussed below, because petitioner's ineffective assistance of counsel claims are without merit, they do not serve as cause to excuse petitioner's defaults. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("if the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal."); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit.") (citation omitted).  Furthermore, because petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent," *see Murray,* 477 U.S. at 495–96.  *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498, petitioner has procedurally defaulted and waived the claims raised in Grounds One and Two of the petition.[5]

**B.  Ground Three and Four are without merit.**

In Ground Three of the petition, petitioner contends that his trial counsel was ineffective for failing to object to the admission of the video tape interview and the prosecutor's comments, the underlying alleged errors in Grounds One and Two of the petition.  Petitioner further

---

[5] It is noted that to establish a credible claim of actual innocence sufficient to excuse his procedural default, petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup,* 513 U.S. at 324.  Petitioner has failed to establish a credible claim of actual innocence under the *Schlup* standard, as he has not supported his allegations of constitutional error with any new evidence of actual innocence.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Schlup,* 513 U.S. at 316.

contends that trial counsel was ineffective for failing to move for an acquittal pursuant to Ohio Crim. R. 29.  In Ground Four, petitioner contends that insufficient evidence was presented at trial to support his convictions.  (*See* Doc. 1 at PageID 15–17).

The Supreme Court precedent setting forth the clearly-established federal legal principles applicable to petitioner's ineffective assistance of counsel claims is *Strickland v. Washington,* 466 U.S. 668 (1984).  In order to establish an ineffective assistance of counsel claim, petitioner must demonstrate that (1) his trial attorney made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense.  *See id.* at 687.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct.  *Id.* at 689.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.*

To satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different.  *Id*. at 694.  A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard.  *Id*. at 693.  However, by the same token, petitioner need not demonstrate that his

counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *Id.* at 695; *see also Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003); *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id.* at 697.

On direct appeal, the Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's ineffective assistance claims. The appeals court overruled petitioner's assignment of error, ruling as follows:

> {¶ 14} In his third assignment of error, Ridder claims that his trial counsel was ineffective for failing to make a Crim.R. 29 motion for an acquittal at the close of the state's case, failing to object to the admission of the video recording of the interview between S.W. and Westgate, and failing to object to the questions and statements that formed the basis for his claims of prosecutorial misconduct. Ridder has failed to demonstrate that counsel was ineffective in these areas.

> {¶ 15} To prove ineffective assistance of counsel, a defendant generally has to demonstrate that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed .2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 141–142, 538 N.E.2d 373 (1989). Prejudice results when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bradley* at 142.

> {¶ 16} Ridder first argues that it was ineffective for trial counsel to fail to make a Crim.R. 29 motion at the close of the state's case. But it is not ineffective assistance to fail to file a motion that would not have been successful. *See State v. Hill,* 75 Ohio St.3d 195, 211, 661 N.E.2d 1068 (1996). S.W.'s testimony alone was sufficient to meet the state's burden on all the charges listed in the indictment. Therefore, had counsel made a Crim.R. 29 motion, it would not have succeeded.

{¶ 17} Ridder next argues that it was ineffective for trial counsel to fail to object to the admission of the video of the interview of S.W. by Westgate. But the video was crucial to defense counsel's trial strategy. First, counsel sought to convince the jury that the events S.W. described occurred in Kentucky, not Ohio. In closing, he said that "if you believe the recording, no conviction." He then went on to say that, if they doubted the statement that she made that the events occurred in Kentucky, "you're doubting the key evidence." Without the video, counsel would not have been able to make the argument, because no other admitted evidence placed the events in Kentucky.

{¶ 18} Additionally, counsel argued that S.W.'s mother had coached her in order to stay in the domestic-violence shelter in Circleville. The only evidence of coaching that counsel was able to develop came from the phrasing of a couple of S.W.'s statements in the recording, and he referred to it repeatedly during his closing argument. Without the recording, counsel would not have had any direct evidence of coaching.

{¶ 19} While these two strategies ultimately proved unsuccessful, that does not mean that they were not sound trial strategies based on the case counsel had to defend. Even "debatable" trial tactics do not establish ineffective assistance of counsel. *State v. Leonard,* 104 Ohio St.3d 54, 2004–Ohio–6235, 818 N.E.2d 229, ¶ 146. And trial counsel's strategy was far from debatable, being likely his best argument for acquittal based on the evidence presented by the state.

{¶ 20} Finally, Ridder argues that it was ineffective for trial counsel to fail to object to the statements and comments made by the prosecutor. But none of the statements were improper. And merely failing to object to a few leading questions is not ineffective assistance. There is value, from a trial-strategy perspective, to not objecting to every de minimis violation during the course of a trial. *See State v. Conway,* 108 Ohio St.3d 214, 2006–Ohio–791,842 N.E.2d 996, ¶ 168; *State v. Holloway,* 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). The fact-finder may perceive objections to be disruptive and annoying, and an objection may draw unwanted attention to an issue that might pass without the jury's notice absent the objection. *See State v. Campbell,* 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (1994); *State v. Mundt,* 115 Ohio St.3d 22, 2007–Ohio–4836, 873 N.E.2d 828, ¶ 90. As a result, "competent counsel may reasonably hesitate to object in the jury's presence." *Campbell* at 53.

{¶ 21} This reasoning goes for objections during closing arguments as well. A reasonable attorney may decide not to interrupt his opponent's closing argument. *State v. Campbell,* 90 Ohio St.3d 320, 339, 738 N.E.2d 1178 (2000). In

addition, Ridder has failed to demonstrate that, but for these comments and the leading questions, the outcome would have been different. *See Bradley* at 142.

{¶ 22} Since Ridder has failed to show that a Crim.R. 29 motion would have succeeded, that the admission of the video recording and the failure to object to the prosecutor's questions or comments was not sound trial strategy, or that the outcome of his trial would have been different in any event, he has failed to establish that his counsel was ineffective. We overrule his third assignment of error.

(Doc. 8, Ex. 8 at PageID 106–108).

After review of the entire record, the Court finds that petitioner has not demonstrated that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of federal law. The appellate court correctly identified *Strickland* as the controlling Supreme Court precedent and reasonably concluded that petitioner's claims were without merit.

First, petitioner is not entitled to federal habeas relief based on his claims that trial counsel was ineffective for failing to object to the admission of the video interview of the victim or comments from the prosecutor. With respect to the admission of the video interview, petitioner contends that the testimony was inadmissible hearsay, which deprived him of a fair trial. However, the Ohio appeals court determined that the testimony was admissible under Ohio Evid. R. 803(4), which provides an exception to the hearsay rule for "[s]tatements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."[6] As noted above (*see*

---

[6] In reviewing the underlying claim for plain error, the Court of Appeals ruled as follows (*see* Doc. 8, Ex. 8 at PageID 104–105):

{¶ 7} Evid.R. 803(4) provides an exception to the hearsay rule for "[s]tatements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the

18

*supra* n.3), petitioner is not entitled to federal habeas to the extent that he claims the trial court

misapplied the Ohio rules of evidence[7] and this Court is bound by the state court's interpretation

of state law. *See Bennett v. Warden, Lebanon Corr. Inst.*, 782 F. Supp.2d 466, 478 (S.D. Ohio

2011) (and cases cited therein) ("because the state courts are final authority on state-law issues,

the federal habeas court must defer to and is bound by the state court's rulings on such matters").

Because the underlying error was itself without merit, counsel was not ineffective for failing to

object. *See Davie*, 547 F.3d at 312.

---

inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This court has previously held that similar statements made by a child victim to a social worker at the Mayerson Center were admissible under Evid. R. 803(4). *See State v. Lukacs,* 188 Ohio App.3d 597, 2010–Ohio–2364, 936 N .E.2d 506, ¶ 4–12 (1st Dist.); *State v. Bowers,*1st Dist. Hamilton No. C–150024, 2016–Ohio–904, ¶ 20–24.

{¶ 8} In determining whether a child's statements were made for the purpose of medical diagnosis or treatment, the *Lukacs* court noted that the inquiry "depends upon the facts of the particular case" and the factors to be examined include (1) the nature of the questioning—whether the interviewer asked leading or suggestive questions; (2) whether the child had a reason to lie; (3) whether the child understood the need to tell the truth; (4) the age of the child at the time the statements were made; and (5) whether the child's statements were consistent. *Lukacs* at ¶ 7.

{¶ 9} Our application of the facts in this case to the considerations set forth in *Lukacs* cause us to conclude that the statements were made for the purpose of medical diagnosis or treatment. Westgate did not ask leading or suggestive questions, S.W. had no reason to lie, Westgate impressed upon her the need to tell the truth, her responses were age-appropriate, and they were consistent. Additionally, as the trial court noted at sentencing, the level of detail S.W. volunteered about the experiences—how things looked, felt, and tasted for example—were wholly inconsistent with either fabrication or coaching. Therefore, the interview was admissible pursuant to Evid. R. 803(4). We overrule Ridder's first assignment of error.

[7] Petitioner also claims that because the victim interview was testimonial admitting it at trial violated his rights under the Confrontation Clause. (*See* Doc. 11 at PageID 1394–95). He cites *State v. Arnold*, 933 N.E.2d 775 (Ohio 2010) for the proposition that statements made to interviewers at child advocacy centers that primarily serve a forensic or investigative purpose are testimonial and are inadmissible under the Confrontation Clause. However, unlike in *Arnold*, the victim in petitioner's case took the stand and was subject to cross examination. Accordingly, the Confrontation Clause was not implicated and the admission of the recorded interview did not violate petitioner's right to confront the witnesses against him. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Levingston v. Warden*, 891 F.3d 251, 254–55 (6th Cir. 2018).

For the reasons stated above, petitioner has likewise failed to demonstrate that the trial court's evidentiary ruling was so egregious that it resulted in the denial of his due process rights. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2013) (noting that a state evidentiary ruling may violate due process where the "evidentiary ruling is so egregious that it results in a denial of fundamental fairness").

Furthermore, the Ohio Court of Appeals reasonably determined that counsel's failure to object to the testimony was trial strategy. Defense counsel argued that the charged conduct described by the victim occurred in Kentucky and that the victim's mother coached her. (*See* Doc. 8, Trans. at PageID 1207, 1215–1219, 1228). As noted by the Ohio appeals court, the recorded testimony was necessary to demonstrate both.[8] Because the Ohio Court of Appeals reasonably determined that counsel's failure to object was the result of trial strategy, the state court reasonably determined that petitioner's ineffective assistance of counsel claim was without merit. *Walker v. Morrow,* 458 F. App'x 475, 487 (6th Cir. Feb. 1, 2012) (citing *Hodge v. Hurley,* 426 F.3d 368, 385–86 (6th Cir. 2005)) ("A petitioner's ineffective assistance claim based on counsel's failure to object will not succeed if the decision not to object flowed from objectively reasonable trial strategy.").

Petitioner is also not entitled to federal habeas relief with respect to his claim that trial counsel was ineffective for failing to object to alleged prosecutorial misconduct. On direct appeal, petitioner argued that the prosecutor continually asked leading questions and made improper comments in closing arguments. (*See* Doc. 8, Ex. 6 at PageID 75–76). As noted above, the Ohio Court of Appeals determined that petitioner's ineffective assistance claim was without merit, finding that petitioner failed to show that he was prejudiced. Specifically, the appeals court found that the prosecutor's comments during closing were fair comments on the evidence/arguments of defense and the leading questions were not related to key testimony. On

---

[8] For example, defense counsel argued, "If you believe the most direct, the most time-crucial statement of that girl, you cannot convict this man. Why? Because if you believe that statement, you believe when the girl was asked, where did these acts occur? Kentucky. That's what she said." (Doc. 8, Trans. at PageID 1207).

this basis, the Ohio appeals court determined that the alleged conduct did not impact the outcome of the trial.[9] (*See* Doc. 8, Ex. 8 at PageID 105–108). Upon review of the record and petitioner's alleged instances of prosecutorial misconduct, the undersigned agrees with the assessment of the Ohio Court of Appeals. Because petitioner failed to demonstrate a reasonable probability that the result of his trial would have been different absent the alleged ineffective assistance, he is not entitled to federal habeas relief based on his ineffective assistance of counsel claims raised in Ground Three of the petition. *See Strickland,* 466 U.S. at 687.

Petitioner is also not entitled to federal habeas relief based on his sufficiency of the evidence claim raised in Ground Four or his related claim that counsel was ineffective for failing to move for a directed verdict under Rule 29. The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's assignment of error challenging the sufficiency and manifest weight of the evidence. The court rejected both claims, providing the following summary of the testimony at trial and reasoning in support of its decision:

> {¶ 23} Ridder's fourth assignment of error is that his convictions were based on insufficient evidence and against the manifest weight of the evidence. When an appellant challenges the sufficiency of the evidence, we must determine whether the state presented adequate evidence on each element of the offense. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine whether the jury clearly lost its way and created a manifest miscarriage of justice. *Id.* at 387.

---

[9] With respect to the leading questions, in reviewing for plain error, the Court of Appeals found no prejudice:

Of the five page citations listed by Ridder that he claims contained leading questions, none of them were related to key testimony about the incidents referenced in the indictment. These five, isolated instances—in a trial that lasted several days and from a transcript that contained over 1200 pages—did not affect the outcome of the trial. (Doc. 8, Ex. 8 at PageID 105).

{¶ 24} S.W.'s testimony was enough to establish the elements of all four rape counts and the GSI count. She testified that it hurt when he put his finger in her, that he would "wiggle" his finger when it was inside her, and that she knew that he had put his finger inside her because he had "opened" her and she could feel it. She described his penis as a "fat noodle" with a hole at the end, and said that he would "wiggle" it when he put it in her mouth. She said that it tasted "nasty" and that she would gargle with water afterward to get rid of the taste. As the trial court noted, her testimony went far beyond what a then seven-year-old girl would have been able to discuss—even with "coaching."

{¶ 25} And, while S.W. said that the events occurred in Kentucky when interviewed by Westgate, at trial the state was careful to ask her only about things that happened in the Delhi home. And, based on the testimony about where the family had lived on different dates, it was clear that the events that S.W. described had occurred in Hamilton County, Ohio. The fact that S.W.'s mother was addicted to and actively using heroin, cocaine, and prescription pain pills, and was a chronic liar does not change this. And while Ridder points to the fact that there was no physical evidence to establish the claims, both a doctor from the Mayerson Center and Detective Macaluso testified that the lack of physical evidence is actually common in this type of case.

{¶ 26} The state presented sufficient evidence to prove that, on at least two occasions, Ridder had digitally penetrated S.W.'s vagina or anus, forced S.W. to perform fellatio on him, engaged in cunnilingus with S.W., and forced S.W. to grab his penis with her hand. This was sufficient to establish the four counts of rape and one count of GSI of which he was found guilty. And those guilty findings were not against the manifest weight of the evidence. We overrule Ridder's fourth assignment of error.

(Doc. 8, Ex. 8 at PageID 108–110).

After review of the record in this case, the undersigned finds that petitioner is not entitled to habeas relief based upon his sufficiency of evidence claim. The clearly-established standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). As the Supreme Court held in *Jackson*, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship*,

397 U.S. 358, 363–64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969–70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318–19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher*, 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796–97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1927 (2012); *Anderson v. Trombley*, 451 F. App'x 469, 474-75 (6th Cir. 2011). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned is convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson*. As reasonably determined by the Ohio appeals court, the victim's testimony provided sufficient evidence to sustain his convictions.[10] Although petitioner argued at trial that the alleged conduct occurred in Kentucky, the victim specifically testified as

---

[10] Petitioner was tried and convicted of four counts of rape under Ohio Rev. Code § 2907.02(A)(1)(b), which prohibits sexual conduct with another person who is less than thirteen years of age, and one count of gross sexual imposition under Ohio Rev. Code § 2907.05(A)(4), which prohibits sexual contact with another who is under the age of thirteen.

to incidents of sexual abuse occurring while she lived in Ohio. (Doc. 8, Trans. at PageID 968–69, 988). As summarized by the Ohio appeals court above, she testified that petitioner digitally penetrated her on more than one occasion (*Id.* at PageID 971, 989), engaged in cunnilingus with her (*Id.* at PageID 985), forced her to touch his penis with her hand (*Id.* at PageID 986), and forced her to perform fellatio on him (*Id.* at PageID 987–88). Although "the testimony of the victim alone is constitutionally sufficient to sustain a conviction," *Tucker v. Palmer*, 541 F.3d 652 659 (6th Cir. 2008), as argued by respondent, the state also introduced corroborating evidence at trial. Specifically, the victim's mother testified that she observed petitioner coming out of her daughter's bedroom naked with an erection. (Doc. 8, Trans. at PageID 570–71, 779). The victim's brother also testified that he heard petitioner in the bedroom with the victim and she told him "[petitioner] did bad things to me." (*Id.* at PageID 837–39).

Although petitioner argues—as he did at trial and on appeal—that no physical evidence was presented at trial and the victim's testimony was inconclusive and inconsistent, it is not the province of this court to reweigh the evidence on habeas review. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (noting that a habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court"). The Ohio Court of Appeals' adjudication of petitioner's sufficiency-of-evidence claims involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial.

Accordingly, petitioner is not entitled to relief on Ground Four of the petition. Because petitioner's sufficiency of evidence claim is without merit, counsel was not ineffective for failing to file a Rule 29 motion, as petitioner claims in Ground Three.

**C. Ground Five is not cognizable**

In Ground Five, petitioner contends that the trial court imposed an excessive sentence without making required statutory findings under Ohio law. Specifically, petitioner contends that the sentence did not comply with Ohio Rev. Code §§ 2929.14(c)(4), 2953.08(g), 2929.11, and 2929.12. (*See* Doc. 1 at PageID 17).

Petitioner has not stated a cognizable claim in Ground Five. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley,* 465 U.S. at 41; *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). On direct appeal, the Ohio Court of Appeals found that petitioner's claims were without merit. (*See* Doc. 8, Ex. 8 at PageID 110–11). Specifically, the Court of Appeals determined that Ohio law did not require the trial court to make factual findings or give reasons for imposing the maximum term of confinement. The appeals court further found petitioner's claim regarding consecutive sentences to be without merit, noting that petitioner was not sentenced to serve his multiple sentences consecutively. (*See id.*).

Petitioner's claim that the state court misapplied Ohio Rev. Code §§ 2929.14(c)(4), 2953.08(g), 2929.11, and 2929.12 does not state a cognizable ground for habeas relief. Accordingly, petitioner is not entitled to federal habeas relief based on Ground Five of the petition.

**D. Ground Six is procedurally defaulted and waived.**

In Ground Six, petitioner contends that his appellate counsel was ineffective for failing to

raise issues regarding venue, prosecutorial misconduct, and hearsay evidence. (Doc. 1 at PageID 18–19). Petitioner argued that he received the ineffective assistance of appellate counsel in his Rule 26(B) application to the Ohio Court of Appeals. However, he procedurally defaulted his claims by failing to timely file his 26(B) application and appeal the Ohio Court of Appeals' decision to the Ohio Supreme Court. Ohio R. App. P. 26(B) provides that a reopening application based on an ineffective assistance of appellate counsel claim must be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." *See also Hoffner,* 860 N.E.2d at 1022-23; *LaMar*, 812 N.E.2d at 971. Here, petitioner failed to comply with that rule when he filed his reopening application on November 4, 2016, three days after the 90-day period expired on November 1, 2016 from the August 3, 2016 appellate-judgment journalization date. (*See* Doc. 8, Ex. 12, 13). As noted above, the Ohio Court of Appeals denied his application upon finding that the application was untimely and petition failed to establish good cause for his delay. (*See* Doc. 8, Ex. 18).

As cause for the default, petitioner claims that he provided prison officials with his application five days before the filing deadline. (*See* Doc. 11 at PageID 1376. *See also,* Doc. 8, Ex. 17). However, even if the federal "prison mailbox rule" applied to his state court filing,[11] petitioner committed a second procedural default when he failed to file a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' decision. Petitioner claims he tried to file a delayed appeal and has attached to his reply a notice of appeal stamped as received by the Ohio Supreme Court on August 3, 2017, August 28, 2017, November 20, 2017, and December 29,

---

[11] Ohio does not follow the federal "prison mailbox rule," which provides that submissions by *pro se* prisoners "are considered filed at the moment of delivery to prison officials for mailing." *Foster v. Warden, Chillicothe Corr. Inst.,* 575 F. App'x 650, 653–54 (6th Cir. 2014) (citing *Houston v. Lack,* 487 U.S. 266, 271–72 (1988)).

2017.  (*See* Doc. 11 at PageID 1403).  However, the filing is not reflected on the Ohio Supreme

Court's online docket records or the Hamilton County Clerk of Court records search.  In any

event, the Ohio Supreme Court does not accept delayed appeals from the denials of applications

to reopen under Ohio App. R. 26(B).  *See* Sup.Ct.Prac.R. 7.01(A)(4).  Petitioner's motion was

filed at the earliest on August 3, 2017, more than six months after the Ohio Court of Appeals

January 13, 2017 decision denying his application as untimely and long after his time expired for

filing a timely appeal to the Ohio Supreme Court.  Accordingly, in the absence of a showing that

a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are

not considered, petitioner has procedurally defaulted and waived the claims raised in his Sixth

Ground for relief.

Accordingly, in sum, having found that petitioner's grounds for relief are non-cognizable,

without merit, or procedurally defaulted and waived, the petition should be denied.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1)

be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in the

petition, which this Court has concluded are waived and thus procedurally barred from review,

because under the first prong of the applicable two-part standard enunciated in *Slack v.*

*McDaniel,* 529 U.S. 473, 484–85 (2000), "jurists of reason" would not find it debatable whether

this Court is correct in its procedural ruling.[12]

---

[12] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address
the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has
stated a viable constitutional claim in any of his grounds for relief.  *See Slack*, 529 U.S. at 484.

A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

   *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

SAMUEL RIDDER,                                     Case No. 1:18-cv-61
      Petitioner,

                                    Barrett, J.

      vs.                                          Bowman, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
      Respondent.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).